Filed 12/23/15  P. v. Porter CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B258933 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA086504) |
| v. | |
| BRUCE LLEWELLYN PORTER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Modified in part; affirmed in part.

Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Bruce Llewellyn Porter was convicted of two counts of armed robbery (Pen. Code, §§ 211, 12022, subd. (a)(1)).[1] On appeal, he contends his conviction on one of the counts must be reversed because the trial court erroneously admitted a recording of a 911 call without a valid hearsay exception and in violation of his constitutional right to confront witnesses against him. We affirm.

## BACKGROUND

On January 26, 2013, between 10:00 p.m. and midnight, Dadallage De Silva observed appellant and a passenger, Keith Taylor, drive a gold Buick into the Century gas station at the intersection of Century Boulevard and Van Ness Avenue in Los Angeles. De Silva observed appellant jump out of the driver's side window, approach Brandon Dupont, who was pumping gas, point a gun at him and take something small from him. Appellant then jumped back into his car through the window and drove away.

De Silva was working the night shift and observed the incident through the window of the cashier booth, which was about 25 feet away from appellant and Dupont. De Silva recognized appellant and the gold Buick because appellant had bought cigars from him every day for the past three years. Curtis Washington, Dupont's cousin, was inside the gas station store when Dupont was robbed.

After the robbery, Dupont told De Silva he had been robbed. Dupont and Washington then drove out of the gas station and contacted Inglewood police, but returned 15 minutes later with an Inglewood police officer, who had directed them to report the crime to the Los Angeles Police Department (LAPD) because the gas station was in the LAPD's jurisdiction. (The gas station was actually in the Los Angeles County Sheriff's Department's jurisdiction, and that department handled the investigation.) De Silva called 911 from the gas station phone and handed the phone to Washington, who spoke with the operator. Washington at first stated he had been robbed at gunpoint while pumping gas, but immediately explained it was his cousin, Dupont, who had been robbed. In response to the operator's questions, Washington stated the robbery had

---

[1] All statutory references are to the Penal Code unless otherwise noted.

occurred 15 minutes earlier, and the suspect drove away. Washington explained he was inside the gas station store and had just paid for gas when the driver of a gold Buick pulled in, almost hitting Dupont, who was walking to the gas pump. The driver got out of the car, pulled a gun, pointed at Dupont, and took his wallet, cell phone and gold chain. At the request of the operator, Washington provided details about the precise time of the incident, the location, his full name and call back number, the make and color of the Buick, the suspect's physical appearance and clothing, the gun, the items taken during the robbery, the direction the suspect was headed when he left the scene, and the suspect's passenger. At the end of the call, the operator informed Washington she would send a unit out to meet him at the gas station.

Los Angeles County Sheriff's Deputy Rodney Anderson responded to the gas station and took statements from Dupont and De Silva.

The next day, in separate photographic lineups, De Silva identified appellant as the suspect who robbed Dupont, and identified Taylor as the passenger in the gold Buick. The Los Angeles Sheriff's Department's investigators were unable to locate Dupont or Washington after the night of the crime.

Investigators obtained an audio recording of Washington's 911 call. In it, a male voice, which De Silva identified as Dupont's voice, occasionally interjected from the background, informing Washington that the gun was black and the Buick was gold, repeating that the suspect took a chain with a cross on it, giving a physical description of the suspect that matched Washington's earlier description, and confirming the gunman was driving the Buick.

Appellant was tried by a jury.

In pre-trial proceedings, appellant moved to exclude the 911 audio recording, arguing it was inadmissible hearsay. The trial court found the recording was admissible as an excited utterance. It found an armed robbery is a highly stressful and exciting event, and Washington had a degree of excitement in his voice on the 911 recording. The trial court also found Washington's statements on the 911 call did not violate defendant's constitutional rights because he made the statements in order to obtain police assistance

3

and they were therefore nontestimonial.  The 911 call recording was admitted and played for the jury over appellant's objection.

De Silva was the only eyewitness who testified against appellant at trial.

The jury found appellant guilty of two counts of second degree robbery committed with a firearm.  (§§ 211, 12022, subd. (a)(1).)  The trial court sentenced him to 25 years and four months in state prison.

Appellant timely appealed.

## DISCUSSION

### I.     The 911 call recording is admissible under Evidence Code section 1240.

Appellant contends the trial court erred in admitting the 911 call recording because it was inadmissible hearsay.  We disagree.

Under the hearsay rule, "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated" is hearsay and inadmissible.  (Evid. Code, § 1200.)  But "[e]vidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240.)  "'To render [statements] admissible [under the spontaneous declaration exception] it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.'"  (*People v. Poggi* (1988) 45 Cal.3d 306, 318.)  Statements made under the immediate influence of an occurence to which they relate are deemed sufficiently trustworthy to be presented to the jury based on the common understanding "'that in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere

4

expression of one's actual impressions and belief.'" (*Showalter v. Western P. R., Co.* (1940) 16 Cal.2d 460, 468.)

We review the trial court's decision to admit evidence for abuse of discretion. (*People v. Williams* (1997) 16 Cal.4th 153, 196-197.) The trial court's determination of preliminary facts will be upheld if supported by substantial evidence. (*People v. Brown* (2003) 31 Cal.4th 518, 541.)

Here, the declarant, Washington, witnessed his friend being robbed at gunpoint 15 minutes before he spoke to a 911 operator. On the 911 call he described the robbery, an event he had perceived from inside the gas station store while Dupont was pumping gas. This evidence supports the trial court's finding that witnessing the armed robbery was startling enough to produce nervous excitement and that Washington was still excited when he spoke to the 911 operator only 15 minutes later. Therefore, the court properly found Washington's statements on the 911 call recording were excited utterances and therefore admissible hearsay under Evidence Code section 1240.

Appellant contends the trial court incorrectly assumed Washington witnessed the robbery, when in fact he had only second-hand knowledge of the events. He argues Washington told the 911 operator that he was inside when the robbery occurred, and Dupont told Washington what to say while on the call. Appellant misstates the evidence. Washington independently explained that the robber almost hit Dupont pulling into the gas station, and that he pulled a gun and pointed it at Dupont. Washington also described the items the suspect took from Dupont, the car the suspect drove (a Buick), and the suspect's physical appearance. These details were personally known by Washington. Dupont, in the background, provided different information at only two points in the call, when he informed Washington of the color of the Buick and color of the gun. The evidence supported the court's finding that Washington witnessed the robbery and spoke from firsthand knowledge.

Appellant contends Washington had sufficient time to reflect and deliberate with Dupont about the robbery in the 15 minutes before he spoke to the 911 operator from the gas station. We disagree. After the robbery, Dupont and Washington left the gas station,

contacted Inglewood police, and then returned to call 911 because Inglewood police directed them to report the crime to the LAPD. Washington and Dupont had been attempting to report the robbery throughout that time span. So long as a declarant is still under the stress of an event, a short lapse of time between the event and a hearsay statement is inconsequential. (*People v. Poggi*, *supra*, 45 Cal.3d at p. 319.) The evidence supported the court's finding that Washington was still excited 15 minutes after witnessing his cousin being robbed at gunpoint.

## II. Washington's statements were nontestimonial, and therefore fall outside the scope of the Confrontation Clause.

Appellant contends admission of the 911 call recording violated his constitutional right under the Confrontation Clause of the United States Constitution. We disagree.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." (U.S. Const., 6th Amend.) The provision bars "admission of *testimonial* statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross examination." (*Crawford v. Washington* (2004) 541 U.S. 36, 53-54, italics added.)

"Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (*Davis v. Washington* (2006) 547 U.S. 813, 822.) Our review of whether a statement is testimonial and thereby implicates the Sixth Amendment is de novo. (*People v. Johnson* (2007) 150 Cal.App.4th 1467, 1478.) We consider a number of factors in determining whether the primary purpose of statements made to police was to prove past facts potentially relevant to a later criminal prosecution: (1) The surrounding circumstances; (2) whether the statements were made in the midst of an ongoing emergency; (3) whether there was an actual or perceived threat to first

responders or the public; (4) the declarant's medical condition; (5) whether the focus of the questioning shifted from addressing an ongoing emergency to obtaining evidence for trial; and (6) the informality of the statement and the circumstances. (*Michigan v. Bryant* (2011) 562 U.S. 344; *People v. Chism* (2014) 58 Cal.4th 1266, 1289.) We apply an objective standard, "considering all the circumstances that might reasonably bear on the intent of the participants in the conversation." (*People v. Cage* (2007) 40 Cal.4th 965, 984.)

Here, Washington began the 911 call by stating he just had been robbed at gunpoint, but later explained his cousin, Dupont, was actually the person robbed. Washington also explained his reason for the call was to obtain police assistance from the LAPD because the Inglewood police told him the robbery occurred in LAPD's jurisdiction. The 911 operator asked questions aimed at determining the time and location of the crime, the whereabouts of the perpetrator, the appearance of the suspects and their car, whether the suspects were armed, and where they were headed when they departed the scene. The circumstances thus objectively indicated Washington's and Dupont's primary purpose in calling 911 was to report an armed robbery and gain police assistance. The questions asked indicate the 911 operator's purpose was to gain basic information to address the emergency. Therefore, the 911 call was nontestimonial under *Davis v. Washington*, *supra*, 547 U.S. 813, 822 and *Michigan v. Bryant*, *supra*, 562 U.S. 344, and no violation of appellant's right under the Confrontation Clause of the United States Constitution occurred.

Appellant contends no police assistance was necessary to meet an ongoing emergency when Washington called 911 because he had already reported the crime to Inglewood police, and therefore his statements to the 911 operator were testimonial. We disagree. When Washington spoke to the operator, he was still seeking to address an ongoing emergency, even though there was a gap in time between the call and the robbery itself. The emergency was prolonged by police procedures in this case, not by Washington's taking time to calm down and prepare statements for later criminal prosecution.

7

Appellant contends the 911 call recording was functionally equivalent to a police report and thus testimonial because Washington fully recounted past events and provided information that would begin a police investigation into the crime. However, "statements are not testimonial simply because they might reasonably be used in a later criminal trial. Rather, a critical consideration is the primary purpose of the police in eliciting the statements. Statements are testimonial if the primary purpose was to produce evidence for possible use at a criminal trial; they are nontestimonial if the primary purpose is to deal with a contemporaneous emergency such as assessing the situation, dealing with threats, or apprehending a perpetrator." (*People v. Romero* (2008) 44 Cal.4th 386, 422.) In *People v. Blacksher* (2011) 52 Cal.4th 769, 816, statements to police were held to be nontestimonial where the primary purpose of the witness and officer was to "determine [the] defendant's whereabouts and evaluate the nature and extent of the threat he posed." Similarly here, at the time of the call, an armed suspect was at large, and the operator elicited from Washington narrowly focused information to assist the police in apprehending the suspect. Only hindsight reveals that no continuing danger existed after appellant departed the scene. No evidence suggests the focus of the 911 operator shifted from addressing the emergency to obtaining evidence for trial.

In any event, any error was nonprejudicial. De Silva also witnessed the robbery, and he identified appellant in court as the robber, explained he had reason to know appellant because he came to the gas station daily, and testified to the same events Washington related on the call, including appellant's use of a gun. Washington's statements on the 911 call recording were cumulative to De Silva's testimony at trial. We therefore conclude that any error in admitting the 911 call recording was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

III.    **The abstract of judgment reflects an incorrect firearm enhancement.**

Respondent informs us the abstract of judgment incorrectly indicates a firearm enhancement was applied under subdivision (d) of section 12022.53, when only an enhancement under subdivision (b) of that section applies. Thus, the firearm enhancement cited in the abstract of judgment must be corrected.

8

**DISPOSITION**

The judgment is modified to reflect a firearm enhancement under subdivision (b) of section 12022.53.  In all other respects the judgment is affirmed.  The clerk of the superior court is directed to prepare an amended abstract of judgment to reflect the judgment as modified and forward a copy of it to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


LUI, J.